IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Kimlyn Cline | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:08-CV-62 (TJW) |
| Advanced Medical Optics, Inc., | § | |
| | § | |
|     Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is plaintiff Kimlyn Cline's Motion to Compel (Dkt No. 18) and related briefing. The Court held a hearing in this matter on January 15, 2009. Following the hearing, both parties submitted supplemental briefs. (Dkt. Nos. 33, 45, 53). The Court has carefully considered arguments presented by both parties as well the applicable law. The court DENIES plaintiff's motion to compel, with an exception noted below, for reasons discussed herein. Also before the Court, are plaintiff's motions to strike defendant's late produced privilege logs (Dkt. Nos. 24, 27). These motions are DENIED.

**I. Background**

Plaintiff Kimlyn Cline filed this complaint on February 13, 2008, alleging strict liability design defect, manufacturing defect, and marketing defect in the COMPLETE MoisturePlus multi-purpose solution sold by Advanced Medical Optics ("AMO"). Plaintiff also alleges breach of warranty as well as violations of the Texas DTPA on the part of the defendant. Plaintiff claims she has been diagnosed with Acathamoeba Keratitis due to the poor disinfectant abilities of the solution. Plaintiff claims defendants were aware of the defect in their product when they

1

marketed and sold it. Plaintiff contends she has already incurred significant medical expenses and will need to incur further expenses to undergo corneal transplant surgery.

In its motion to compel, plaintiff seeks to obtain access to documents related to defendant AMO's post-recall product testing, AMO's "root cause" analysis, AMO's health hazard analysis and various reports submitted to the FDA and other regulatory agencies. In all, plaintiff moves the Court to compel defendant to serve 16 identified documents totaling 1489 pages that defendant had claimed were privileged in the privilege log produced to the plaintiff by October 13, 2008 – the deadline to exchange privilege logs. Plaintiff argues these documents were created for multiple business purposes and should not be considered privileged. In support for its argument, plaintiff points to the fact that defendant has provided these documents to the FDA, CDC and other governmental agencies. Further, plaintiff argues that portions of these studies have already been published to the public by the defendant.

Defendant claims that these studies were done in anticipation of litigation and are therefore protected under the attorney-product privilege as well as the attorney-client privilege. Defendant contends the in-house counsel who initiated the investigation was their senior managing attorney, Ms. Janet Richardson. Defendant has included her affidavit with its response to the motion. In her affidavit, Richardson contends that the investigation was started following a notice from the CDC/FDA as well as her discovery of lawsuits that were filed in Canada and California. Ms. Richardson represents that this discovery occurred on May 25, 2007, when AMO was notified by CDC that it had received information regarding possible association between the allegedly defective solution and Acathamoeba Keratitis infections. *See* Response, Ex A., Aff. of Janet Richardson, at p. 2.

Defendant cites the following reasons for the Court to find these documents within the scope of the two privileges, thereby shielding the documents from disclosure:

1. The primary purpose of the investigation for preparation for litigation.

2. The investigation was conducted at the direction of in-house counsel.

3. Results of the investigation were communicated only to in-house counsel.

4. The investigation and its results reflect mental impressions and opinions of counsel.

On January 08, 2009, the Court ordered defendant to produce each of the documents listed in the privilege log to the Court for an *in camera* review. In response to the order, defendant has made a series of submissions to the Court, providing thousands of documents to the Court. These included documents claimed in the original privilege log, as well documents that were claimed privileged in two subsequent logs that defendant created after the deadline to exchange privilege logs. The Court has conducted an *in camera* review of these documents.

The Court held a hearing in this matter on January 15, 2009. Both parties argued to the Court, the attorney client privilege as well as the work product privilege. The Court also raised the issue of possible waiver of the work product privilege by the defendant. Following the hearing, the parties submitted supplemental briefs related to the waiver issue. Dkt. Nos. 33, 45. On February 27, 2009, the defendant informed the Court that AMO has now disclosed to the plaintiff, all documents previously submitted to the FDA.[1] Dkt. No. 53. This part of the motion

---

[1] The disclosure was made subsequent to a denial of AMO's claims of privilege with regard to these documents by the Honorable David C. Velasquez in a similar lawsuit in the Superior Court of California. *See* Dkt. No. 53, Ex. B.

is now moot and is therefore denied as such.

**II. Discussion**

**1. Attorney-Client Privilege**

The attorney-client privilege exists to protect confidential communications and is waived by disclosure of confidential communications to third parties. *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). The Federal Rule of Evidence 501 provides that in cases where state law supplies the rule of the decision, such as this diversity-jurisdiction matter, the "privilege of a witness, person, government, state, or political sub-division thereof shall be determined in accordance with State law." *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003). Texas privilege law applies to this case. Texas law mandates that with regard to attorney-client privilege, the law of the state with the most significant relationship to the communication apply. *Ford Motor Co. v. Leggat*, 904 S.W. 2d 643 (Tex. 1995). Defendant AMO is based out of California, and California is the state with the most significant relationship to the communications to which privilege is claimed. Defendants point out that attorney-client privilege in California is statutorily established and the proponent of the privilege need only make a *prima facia* case establishing that the communication falls within the privilege. CAL. EVID. CODE § 954. Once an attorney-client relationship has been established, communications between attorney and client are presumed to be in confidence, and an opposing party bears the burden of proving the communication was not in confidence. § 917; *Action Performance Co. v. Bohbot*, 420 F. Supp. 2d 1115, 1118 (C.D. Cal. 2006).

Here the defendant argues that it has made the *prima facia* case because an attorney is involved in every single communication for which this privilege is claimed. Defendant

represents that each document for which AMO has claimed attorney-client privilege, either the author or one or more recipients of the document is an attorney involved in the matter related to the allegedly defective solution. Further, defendant contends that in each of these communications, confidential transmittal to or from the attorney is the dominant purpose of the communication. The Court finds that under California law, the defendant has carried its initial burden to produce *prima facia* evidence that these communications are privileged. The Court finds that the plaintiff has not carried her burden of proving that the communications were not made in confidence in this case. Therefore, the Court denies plaintiff's motion to compel disclosure of documents to which such attorney-client privilege has been claimed by the defendant and where such communications.[2]

## 2. Work Product Privilege

The federal attorney work-product doctrine is codified in the Federal Rules of Civil Procedure:

> Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

---

[2] Defendant represents to the Court that the California Court has found the same documents to be protected by the attorney-client privilege. Given that California privilege law applies to the communications at issue, the Court directs the parties to advise this Court of any further orders

5

The work product privilege exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields*, 864 F.2d at 382. "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).[3]

Here, defendant contends that the "root cause" investigation was conducted in anticipation of litigation. AMO relies on Ms. Richardson's affidavit to argue that she was in charge of the investigation at all times. Further, AMO argues that some of the investigation materials contain mental impressions and opinions of Ms. Richardson and members of AMO's legal team, entitling these materials to a heightened standard of protection. *See* Response, at p. 12 (citing *Upjohn Co. v. U.S.* 449 U.S. 383 (1981)).

First, plaintiff argues that there exist documents that predate the CDC's notification to Richardson on May 25, 2007. The Court finds that there could not have existed anticipation of litigation at such time and defendant is not entitled to claim work-product privilege to any documents that predate such discovery. The Court notes however, that of the documents submitted to the Court, the defendant has claimed attorney-client privilege to all documents that predate May 25, 2007. To the extent that plaintiff seeks any other documents that predate the May 25, 2007 discovery, and that are not protected by attorney-client privilege, the Court ORDERS defendant to produce such documents to the plaintiff within ten (10) days of this order.

---

from the California court related to the disclosure of these documents.
[3] Ordinarily, the work-product doctrine should only be applied after it is decided that the attorney-client privilege does not apply. *See, e.g., Upjohn*, 449 U.S. at 397.

With regard to documents created following Ms. Richardson's discovery of possible litigation, plaintiff argues that Ms. Richardson did not create a discrete litigation-specific team separate and independent from AMO's research department to conduct the investigation. Plaintiff further argues that the tests conducted as part of the "root cause" investigation were not separate and apart from the activities that AMO conducted as part of the recall process.[4] Therefore, it contends these tests were conducted in the ordinary course of business, and not in anticipation of litigation.

The Court agrees that the "work product doctrine is not an umbrella that shades all materials prepared by a lawyer." *El Paso Co.*, 682 F.2d 530. However, litigation need not be imminent to protect documents prepared by attorneys in anticipation thereof to come within the work product doctrine, so long as the primary motivating purpose behind creation of the document was to aid in possible future litigation. *Exxon Chem. Patents v. Lubrizol Corp.*, 131 F.R.D. 668, 670 (S.D. Tex. 1990) (citing *United States v. Orr*, 645 F.2d 71 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981)). Further, it is not necessary that the only purpose of the document be one related to litigation or that the preparation not be driven by procedures already in place. *See Church of Scientology of Texas v. I.R.S.*, 816 F. Supp. 1138, 1154 (W.D. Tex. 1993) ("Attorney work-product materials are protected even if they were not prepared for a specific claim; it is sufficient if they were prepared in anticipation of foreseeable litigation."). Similarly, the Court finds no case law requiring the lawyer to use outside consultants or employ a discrete group specifically for preparing such materials in order for them to come within the scope of the

---

[4] Plaintiff argues that the investigation was conducted as part of AMO's own Corrective and Preventive Action (CAPA) system for identifying and implementing corrections and corrective actions.

attorney work product privilege. Here defendant contends, and Richardson avers that the primary purpose of the investigation was anticipation of litigation, and the investigation was controlled by Richardson and AMO's legal team

The level of protection from disclosure depends on whether work-product is classified as "ordinary" or "opinion" work-product. *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003). Documents are presumed privileged as long as they satisfy the "anticipation of litigation" criteria. *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 357(E.D. Tex. 1999). To override this presumption on "ordinary" work-product,[5] the moving party must make a two-part showing under Rule 26. First, that he has a substantial need of the materials, and second, that he is unable to recreate or obtain the materials without undue hardship. Fed. R. Civ. P. 26(b)(3). Although the Court finds that plaintiff Cline has demonstrated to the court a substantial need for the "root cause" investigation materials, the Court is of the opinion that a significant portion of information relevant to the present litigation is already in the hands of the plaintiff. The defendants had previously made several reports related to the "root cause" investigation to the FDA as part of the recall of their allegedly defective product. Defendants have now made all of these reports available to the plaintiff. Similarly, information from AMO's in-house study was used to publish three articles in scientific journals. Some of AMO's conclusions and data related to this study are also disclosed in these articles. Therefore, the Court finds that there is sufficient disclosure to the plaintiff with regard to the data related to the in-house investigation conducted by AMO to which work-product privilege is claimed.

---

[5] Ordinary work-product generally consists of "primary information, such as verbatim witness testimony or objective data" collected by or for a party or a party's representative. *Kent Corp. v. NLRB,* 530 F.2d 612, 624 (5th Cir. 1976).

Opinion work-product, on the other hand, which consists of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party, is afforded an almost absolute protection from discovery. *See In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). Plaintiff has not met the higher burden of requiring disclosure of opinion work product by the defendant here. Plaintiff's motion to compel disclosure of documents to which such work-product privilege is claimed is denied at this time.

Based on Fifth Circuit privilege law, the Court finds no reason to compel defendants to disclose documents sought by the plaintiff in her motion, except for those noted above. The Court therefore DENIES the motion to the extent that it is not moot following defendant's recent submission to the plaintiff.

SIGNED this 6th day of March, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE